Argued and submitted November 26, 1997; resubmitted En Banc June 10, reversed and remanded June 24, 1998

## STATE OF OREGON,
*Respondent,*

*v.*

## DARLAS RAI LANIG,
*Appellant.*

## (CM95-20641; CA A93112)

963 P2d 58

Daniel Q. O'Dell, Deputy Public Defender, argued the cause and filed the brief for appellant. With him on the brief was Sally L. Avera, Public Defender.

Douglas F. Zier, Assistant Attorney General, argued the cause for the respondent. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

LANDAU, J.

**LANDAU, J.**

Defendant appeals the judgment entered after her conviction for possession of a controlled substance. ORS 475.992(4). We review for errors of law, ORS 138.220, and reverse.

We view the facts in the light most favorable to the state. *State v. Tucker*, 315 Or 321, 325, 845 P2d 904 (1993). On April 15, 1995, two deputies of the Benton County Sheriff's office stopped defendant for a broken tail light infraction. ORS 816.330(1)(a). Officer Gore approached on the driver's side of defendant's car, and Officer Reed approached on the passenger's side. Gore asked defendant for her driver's license and noted that defendant seemed nervous and spoke rapidly. At that time, Reed told Gore that he saw a film canister inside defendant's purse, which was sitting on the seat beside her. Gore asked defendant what was in the film canister, and defendant denied possessing one. Reed then told Gore that he believed that she was trying to hide the canister. Reed told defendant to get out of the car and asked for permission to search it. Defendant consented.

The officers did not find the canister in the car, but they did find a razor blade and a white powdery residue on the visor mirror. Defendant admitted that the substance on the visor was "meth," but she said that it was a year old and that she did not use drugs anymore. Gore then asked for permission to search defendant's purse, and she consented. Gore did not find the canister in her purse either. Later, the deputies searched the ground behind where defendant had been standing, and they found the canister. Defendant denied that it was hers. The officers opened it and found a small amount of white powder, a razor blade and a straw. Defendant was arrested for possession of a controlled substance.

At trial, defendant moved to suppress all evidence derived from the traffic stop. She argued that, among other things, the officers exceeded the permissible scope of the traffic stop in violation of ORS 810.410. The state argued that the officers had reasonable suspicion to expand the scope of the stop, based on the fact that defendant appeared unusually nervous, spoke rapidly and possessed a film canister. The

trial court found that defendant was nervous, but not unusually so:

> "The officer did notice that she was speaking rapidly and she appeared very nervous, but I don't see that that's any different from many people who are stopped for driving citations at night. They're nervous and they may speak rapidly."

The court nevertheless concluded that the officers had reasonable suspicion of possession of a controlled substance, because of her possession of the film canister and, on that ground, denied defendant's motion to suppress.

On appeal, defendant contends that the trial court erred in denying the suppression motion, because mere nervousness and possession of a film canister do not give rise to reasonable suspicion of possession of a controlled substance. The state contends that defendant's nervousness and possession of the film canister supported the officers' reasonable suspicion. We agree with defendant.

■ ORS 810.410(3)(b) provides that a police officer

> "[m]ay stop and detain a person for a traffic infraction for the purposes of investigation reasonably related to the traffic infraction, identification and issuance of citation."

The statute has been construed to prohibit an officer from pursuing any investigation not reasonably related to the traffic infraction, identification and issuance of citation unless, during the course of that investigation, the officer develops reasonable suspicion that the person stopped has committed a crime. *State v. Aguilar*, 139 Or App 175, 181, 912 P2d 379, *rev den* 323 Or 265 (1996); *State v. Dominguez-Martinez*, 321 Or 206, 213, 895 P2d 306 (1995). "Reasonable suspicion" requires an officer to "point to specific, articulable facts giving rise to a reasonable inference that the defendant committed a crime." *State v. Morton*, 151 Or App 734, 738, 951 P2d 179 (1997). Any evidence obtained as a result of an unlawful extension of the investigation during the traffic stop must be suppressed. *Dominguez-Martinez*, 321 Or at 214.

■ In this case, the officer questioned defendant about the contents of the film canister in her purse. That question was unrelated to the traffic stop. It was authorized, therefore,

only if the officer had developed at that point reasonable suspicion that defendant had committed a crime. The state contends that the officer had developed reasonable suspicion on the basis of defendant's unusual nervousness and rapid speech, as well as her possession of a film canister.

The trial court found that defendant had not behaved unusually, and, because there is evidence to support that finding, we are bound by it. *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991). That leaves defendant's possession of a film canister. A film canister is not so uniquely associated with the storage and transportation of drugs that, by itself, it suggests that it contains drugs. It may well be true that, in some cases, film canisters have been used to store drugs. But to satisfy the requirement of reasonable suspicion, there must be some articulable basis for suspecting that *this defendant* was using the film canister for that purpose. *Morton*, 151 Or App at 738. In this case, there is no testimony that the officers suspected that defendant was under the influence of drugs. There was no testimony that she was in any way uncooperative or that she acted in a furtive or suspicious manner. There was no testimony that the officers had any basis to suspect that defendant was using the film canister for anything other than its intended, lawful use.

The state suggests that defendant did act suspiciously after having been asked about the canister, that she attempted to conceal it and to dispose of it when asked what it contained. The state's argument, however, misses the point, which is that the officer needed reasonable suspicion to ask about the canister in the first place. Reasonable suspicion cannot be based on the answers to questions the officer had no authority to ask.

The state agues that the evidence also is admissible under section (1)(f) of Ballot Measure 40 (1996), codified at Article I, section 42(1)(f), of the Oregon Constitution, which provides that "victims in all prosecutions for crimes * * * [have] [t]he right to have all relevant evidence admissible against the criminal defendant[.]" Defendant contends that Ballot Measure 40 does not apply retroactively to appeals pending at the time the amendment was enacted.[1] The state

---

[1] The parties incorporate arguments asserted by the state and the Public Defender in extensive briefs submitted to the Supreme Court in response to

contends that certain language in Measure 40 evinces an intention that the measure apply retroactively to all cases pending at the time of its enactment. In particular, the state points to a reference in the measure to its effect on "all prosecutions," to a reference in the preamble to persons "who have committed criminal acts" and to a declaration that the rights conferred on victims by the measure "shall be limited only" to the extent required by the federal constitution.

At the outset, we acknowledge that we previously stated that "because the Supreme Court has the matter under advisement, it would be of no benefit to decide the applicability and meaning of relevant Ballot Measure 40 issues." *State v. Nielsen,* 147 Or App 294, 296, 936 P2d 374, *rev den* 326 Or 68 (1997). We have reconsidered that conclusion.

■■ Whether a particular enactment is to be applied retroactively is a matter of legislative intent. *Whipple v. Howser,* 291 Or 475, 479-81, 632 P2d 782 (1981). The intended meaning of a constitutional provision generally is determined by applying the same interpretive methodology that is required for ascertaining the intended meaning of statutes. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993); *Roseburg School Dist. v. City of Roseburg,* 316 Or 374, 378-79, 851 P2d 595 (1993). That methodology requires examination of the text in context and, if necessary, the legislative history and applicable canons of construction. *PGE,* 317 Or at 610-12.

In this case, the text of Ballot Measure 40 contains no retroactivity clause. Such clauses are neither technically abstruse in concept nor difficult to draft in practice. They are common and are employed frequently both by legislatures in enacting statutes and by the people in enacting statutes and constitutional amendments. *See, e.g.,* Or Const, Art II, §§ 19(3) and 20(2) (Ballot Measure 11 (1988); enacting term limits that do not apply to terms commenced before enactment); Or Const, Art VII (Amended), § 1a (Ballot Measure 9 (1960); requiring mandatory retirement for judges, but not applying

questions from the court on the applicability and constitutionality of Measure 40 in *State v. Cleveland,* SC S41302; *State v. Fleetwood,* SC S41311; *State v. Toevs,* SC S42836.

to terms commenced before enactment); Or Const, Art I, § 11 (Ballot Measure 2 (1934); revising rights of accused in criminal prosecution, but expressly not applying to crimes committed before effective date of amendment); ORS 161.035(4) ("When all or part of a criminal statute is amended or repealed, the criminal statute or part thereof so amended or repealed remains in force for the purpose of authorizing the accusation, prosecution, conviction and punishment of a person who violated the statute or part thereof before the effective date of the amending or repealing Act."). The absence of any such provisions, therefore, strongly suggests that the measure was not intended to apply to cases pending upon enactment. *See, e.g., Boone v. Wright*, 314 Or 135, 138, 836 P2d 727 (1992) (The absence of a retroactivity clause "suggests that the legislature either did not intend [retroactive application] * * * or, at least, did not consider the issue."); *Rhodes v. Eckelman*, 302 Or 245, 249, 728 P2d 527 (1986) ("The legislature knows how to direct retrospective application; it knows how to write emergency clauses. In this case it did neither.").

The state contends that, in spite of the lack of a retroactivity clause, the intentions of the voters are manifest from the wording of several key phrases in the measure. First, the state argues that the reference to the measure conferring rights to victims in "all prosecutions" makes clear that the measure was intended to apply even to prosecutions that already had taken place before enactment. We do not find in those two words, however, all that the state suggests. It is not at all clear that the phrase "all prosecutions" was intended to be used in a temporal sense. The subject of the sentence from which the state extracts the reference in fact does not concern the effectiveness of the law as to pending cases.[2]

---

[2] Or Const, Art I, § 42(1), provides, in part:

"To ensure crime victims a meaningful role in the criminal and juvenile justice system, to accord them due dignity and respect, and to ensure that persons who violate laws for the punishment of crime are apprehended, convicted and punished, the following rights are hereby granted to victims in all prosecutions for crimes and juvenile delinquency proceedings[.]"

There follows 14 subsections specifically enumerating those rights.

The phrasing of the preamble is similarly inconclusive. It states that Measure 40 "is designed to preserve and protect crime victims' rights to justice and due process and to ensure the prosecution and conviction of persons who have committed criminal acts." The state suggests that the tense of the phrase makes clear an intention to have the measure apply retroactively. The statement, however, does not specify when the crimes have been committed, whether before the enactment of the measure or after. The subject of the sentence simply is not its applicability to pending cases.

Finally, the phrasing of the declaration that victim's rights "shall be limited" only to the extent required by the federal constitution cannot be construed conclusively to require retroactive application. Once again, the subject of the sentence in which those words appear has nothing to do with the applicability of its provisions to pending cases.[3] At best, each of the textual references on which the state relies—individually and collectively—might warrant the logical inference that the voters may have assumed retroactive application of Measure 40. Those references, however, also reasonably may be read to have nothing to do with retroactivity and warrant the logical inference that the voters either did not intend retroactive application of the measure or did not think about the issue. The text, in short, is ambiguous.

In that regard, we note that the Supreme Court has rejected retroactivity arguments based on snippets of statutory text very similar to those asserted in this case. In *Boone*, the court addressed whether the 1989 amendments to the Post-Conviction Hearing Act, which imposed a 120-day time limit on the filing of a petition for relief, applied retroactively. By its terms, the statute applied to "[a] petition pursuant to" the act, without any limitation. The state argued that the statute applied retroactively "because the statute applies by

---

[3] The complete sentence is:

"The rights conferred on victims by this section shall be limited only to the extent required by the United States Constitution; Section 9, Article I and Section 12, Article I of this Constitution shall not be construed more broadly than the United States Constitution and in criminal cases involving a victim, the validity of prior convictions shall not be litigated except to the extent required by the United States Constitution."

Or Const, Art I, § 42(2).

its terms to all petitions filed, and the legislature did not exempt petitioners whose convictions and appeals became final before the effective date of the amendment." *Boone*, 314 Or at 138. The court rejected the state's argument, commenting that the language on which the state relied simply did not say one way or the other whether the legislature intended the statute to apply retroactively. *Id.* ("It is not possible to discern from the words of the 1989 amendment whether the legislature intended the 120-day limitation period to apply [retroactively]."). The court instead examined the broader text of the statute and found especially important the fact that the legislature had failed to include a retroactivity clause. From the absence of such a clause, the court inferred that the legislature either did not intend the statute to apply retroactively or did not consider the matter. *Id.* Finding no clear expression of legislative intent, the court looked to the history of the enactment. *Id.* Finding no relevant history, the court turned to relevant canons of construction. *Id.* at 139. The court found relevant the canon that statutes shortening a limitation period apply prospectively if the legislature does not express a contrary intent. *Id.* Applying that canon, the court concluded that the amendments did not apply retroactively. *Id.*

The state suggests that *Boone* simply was wrongly decided, that the court's "somewhat summary dismissal of the state's analysis" is inconsistent with the interpretive methodology articulated the following year in *PGE*, and that the court "proceeded more quickly than is appropriate to reliance on a mere maxim of construction." It is not for us to say whether *Boone* was decided correctly. We do read the case, however, as having been decided in a manner that is entirely consistent with *PGE*. The court carefully examined the text in context and, finding ambiguity in the text, proceeded to examine legislative history and relevant canons of construction. That is precisely what *PGE* requires. *PGE*, 317 Or at 610-12.

We find no clear expression of legislative—that is, voter—intent in the text of Ballot Measure 40. It contains no retroactivity clause, suggesting either that the voters did not intend retroactive application or that they simply did not think about the matter. Following the interpretive template

of *PGE*, and the example of *Boone*, we therefore turn to the history of the measure.

The history of a measure enacted by the voters includes the ballot title and other materials contained in the voters' pamphlet. *Ecumenical Ministries v. Oregon State Lottery Comm.*, 318 Or 551, 560 n 8, 871 P2d 106 (1994); *State v. Allison*, 143 Or App 241, 251, 923 P2d 1224, *rev den* 324 Or 487 (1996). We have reviewed all the relevant materials and find no statements that remotely bear on the topic at hand. We therefore turn to the relevant canons of construction. One relevant canon of construction is that, in the face of competing constructions of an enactment, we generally are required to "choose the interpretation which will avoid any serious constitutional difficulty." *State v. Duggan*, 290 Or 369, 373, 622 P2d 316 (1981); *State v. Meyers*, 153 Or App 551, 560, 958 P2d 187 (1998). The canon is pertinent to this case, because construing Measure 40 to apply retroactively likely would set the measure on a collision course with state and federal constitutional prohibitions on the enactment of *ex post facto* laws.

Article I, section 21, of the Oregon Constitution, provides that "[n]o *ex post facto* law * * * shall ever be passed." Article I, section 10, of the United States Constitution, likewise prohibits the enactment of *ex post facto* laws.[4] Both have been construed to prohibit enacting laws that (1) punish acts that were legal when committed; (2) impose greater or additional punishment than the punishment that was available at the time the criminal act was committed; or (3) deprive a criminal defendant of a defense that existed before enactment of the new law. *Collins v. Youngblood*, 497 US 37, 42, 110 S Ct 2715, 111 L Ed 2d 30 (1990); *State v. Cookman*, 324 Or 19, 27, 920 P2d 1086 (1996). In this case, section (1) of Ballot Measure 40 contains at least three amendments that pertain to the subject of sentencing of criminal defendants. Or Const, Art I, § 42(1)(e), (j) and (k). At least one of those amendments significantly *increases* the punishment that

---

[4] The state argues that the state constitutional prohibition does not apply to Measure 40, because the measure itself confers rights on victims limited only to the extent required by the federal constitution. Because the state and constitutional prohibitions have been consistently construed, at least insofar as they apply to this case, we do not address the state's argument.

previously was available. Subsection (k) provides that "no law shall limit the court's authority to sentence a criminal defendant consecutively for crimes against different victims[.]" Or Const, Art I, § 42(1)(k). That amendment removes previous statutory limitations on the authority of the courts to impose consecutive sentences. *See, e.g.,* ORS 137.121; ORS 137.123 (1995); OAR 213-008-0007; OAR 213-012-0020 (1995). Hence, the subsection poses a potential *ex post facto* problem.

In that regard, we note that not even the state suggests that the three sentencing provisions of Measure 40 apply retroactively. The problem is that there is no textual basis for concluding that the voters intended some sections, *i.e.*, the nonsentencing sections, to have retroactive effect and others, *i.e.*, the sentencing provisions, only prospective effect. Either Measure 40, as a whole, applies retroactively, or it does not. Because applying Measure 40 retroactively would raise serious doubts about the constitutionality of the enactment, we must conclude that the voters did not intend the measure to have retroactive effect.

A second canon—much older, but no less familiar—suggests the same conclusion. It is the presumption that constitutional amendments apply prospectively. An example of its application to circumstances similar to those before us may be found in *Darling v. Miles*, 57 Or 593, 112 P 1084 (1911). At issue was whether recent voter-enacted amendments to Article VII of the Oregon Constitution, concerning the scope of judicial review of trial proceedings, applied to appeals pending on the effective date of the amendments. The amendments stated that they applied "upon any appeal of any case." *Id.* at 598. The court nevertheless concluded that the enactment applied only prospectively:

> "But a constitution always operates prospectively, unless it is clearly shown from the language used or the objects to be accomplished that the provision was intended to operate retrospectively, and such intent must be clearly established."

*Id.*

To be sure, the court in *Darling* applied the canon as a presumption with which it *began* its analysis, requiring prospective application in the absence of clear evidence of a contrary intention. *Id.* The Supreme Court since has determined that such a clear statement approach no longer is appropriate and that retroactivity must be determined as a matter of intent and not of presumptions. *Whipple*, 291 Or at 487. The court, however, has been careful to state that the canons concerning retroactivity have not been discarded completely in the process; they are considered more appropriately as means by which the courts may resolve the question of retroactivity when the intention of the legislature or of the voters is otherwise unclear. *Id.* ("[w]e do not abandon the 'rules' or 'maxims' of construction * * * such 'rules' or 'maxims' may be of aid to the court in determining the probable intent of the legislature" when the court cannot otherwise determine it from text or enactment history). Thus, in this case, we consider the canon of prospectivity at the third level of the *PGE* analysis, because we find no unambiguous statement of legislative intent in the text, context or history of Measure 40.

The state insists that "it is doubtful that the maxim stated in *Darling* has any continuing vitality." According to the state, the maxim is akin to those borne of nineteenth-century common-law hostility to legislation generally and should be regarded as an "anachronism."

There certainly are canons of construction that reflect a fundamental judicial hostility to legislation, and those appropriately may be regarded as relics of a view that no longer survives. *See, e.g., Beaver v. Pelett*, 299 Or 664, 668-69, 705 P2d 1149 (1985) (canon that statutes in derogation of common law must be strictly construed, "expressing in part resistance to changes in existing law and in part the profession's historical preference for case law over legislation, is long overdue to be put to rest"). The canon of prospectivity, however, is not such a rule of construction. It dates back far earlier than the judicial chauvinism of the nineteenth century, to the ancient Romans and Greeks. Elmer Smead, *The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence*, 20 Minn L Rev 7 5, 775-77 (1936) (tracing origins of rule back through Cok and Bracton to the early

Romans and Greeks). And it reflects not judicial hostility to legislation, but instead concern with principles of fairness and justice, very different—and hardly anachronistic—principles. *Id.* at 776.[5]

We conclude that, given the inconclusiveness of the text and the absence of any relevant enactment history, applicable canons of construction require that we construe Measure 40 to apply prospectively only.

■ The state finally argues that the evidence nevertheless is admissible under Section 1 of Senate Bill 936[6] (SB 936), which provides, in part:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution[.]"

SB 936 does not apply to cases in which judgment was entered by the trial court before December 5, 1996. *Meyers,* 153 Or App at 560. Because judgment in this case was entered by the trial court on February 12, 1996, SB 936 does not apply.

Reversed and remanded.

---

[5] The state cites *United States v. Carlton,* 512 US 26, 114 S Ct 2018, 129 L Ed 2d 22 (1994), which it characterizes as "recognizing that older cases denying retroactivity were based on the now-rejected understandings of a prior era." The state's characterization of the holding in *Carlton* is correct as far as it goes. It simply does not have any bearing on the issue at hand.

In *Carlton,* the question was not whether a statute applied retroactively, but instead whether certain amendments to the federal estate tax statute that expressly applied retroactively could do so constitutionally. The Court held that the retroactivity clause in the statute did not offend the Due Process Clause of the federal constitution. The Court distinguished earlier cases to the contrary as being based on notions of substantive due process that are now outdated: "Those cases were decided during an era characterized by exacting review of economic legislation under an approach that 'has long since been discarded.'" *Id.* at 34 (quoting *Ferguson v. Skrupa,* 372 US 726, 730, 83 S Ct 1028, 10 L Ed 2d 93 (1963)).

[6] Oregon Laws 1997, Chapter 313 (SB 936), was signed by the Governor and became effective on June 12, 1997. Or Laws 1997, ch 313.