Argued and submitted December 23, 1997; resubmitted En Banc May 6, reversed and remanded June 24, respondent's petition for reconsideration filed July 24 allowed by opinion October 28, 1998
See 156 Or App 609 (1998)

## STATE OF OREGON,
*Appellant,*

*v.*

## STEVEN GLEN FUGATE,
*Respondent.*

## (96-0660-C; CA A96628)

963 P2d 686

Kaye E. Sunderland, Assistant Attorney General, argued the cause for appellant. With her on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Anne Morrison, Deputy Public Defender, argued the cause for respondent. With her on the brief was Sally L. Avera, Public Defender.

LANDAU, J.

Edmonds, J., concurring.

## LANDAU, J.

Defendant was charged with driving while under the influence of intoxicants (DUII). ORS 813.010. The trial court granted defendant's pretrial motion to suppress evidence of alcohol-related impairment, and the state appeals. The state contends that Senate Bill 936 (SB 936), although enacted by the 1997 Legislative Assembly after the trial court's decision in this case, applies to this case and compels reversal. Defendant contends that the recently enacted legislation cannot be applied to this case on various constitutional grounds. We reject defendant's constitutional contentions, conclude that SB 936 applies to this case, and reverse and remand.

We take the relevant facts from the findings of the trial court. On the night of February 11, 1996, a police officer observed defendant driving a car without a license plate light. The officer stopped the vehicle, approached it and observed three passengers in addition to defendant. The officer asked for defendant's driver's license and asked all of the passengers for their identification, as well. The officer then ran a Motor Vehicle Division check on all four individuals. He found that defendant's license had been suspended, but that the basis for the suspension would result in a traffic infraction, not a traffic crime. He also learned that there was an outstanding warrant for the arrest of one of the passengers. The officer directed the passenger to get out of the car, arrested him and conducted a search incident to the arrest. While searching the passenger, the officer noticed a pouch in the back seat of the car, which he thought was a gun holster. He seized the pouch, opened it and observed that, although it did not contain a gun, it did contain a spoon with white residue.

At that point, the officer ordered everyone else out of the car, including defendant. When defendant was out of the car, the officer noticed for the first time that defendant's eyes were red and watery and that his breath smelled of alcohol. The officer requested, and defendant consented to perform, field sobriety tests, which defendant failed. The officer arrested defendant for driving under the influence of intoxicants.

Defendant moved to suppress the evidence of his physical impairment on the ground that the officer observed that evidence only because he exceeded the permissible scope of a traffic stop when he asked the passengers for their identification. According to defendant, under ORS 810.410(3)(b), an officer may ask questions unrelated to the conduct that was the basis for the traffic stop only if the officer develops reasonable suspicion that a crime has been committed. In this case, defendant argued, the officer lacked any reasonable suspicion that the passengers had committed any violation, infraction or crime and, consequently, could not lawfully ask them for their identification. Defendant argues that the request for identification led to the officer discovering the one passenger's outstanding warrant, which, in turn, led to the officer ordering defendant out of the car, which led the officer to observe for the first time evidence of defendant's intoxication. The evidence of his intoxication, defendant concludes, was fruit of the poisonous tree.

The trial court agreed with defendant, explaining:

"The Court finds that by asking for the passengers' identifications, the Officer exceeded the scope of the investigation authorized pursuant to a stop for a traffic infraction. ORS 810.410(3)(b) limits the authority of police officers to enlarge the scope of their investigation when a stop has been made for a traffic infraction. Under that statute, when an Officer stops a vehicle on the basis of a traffic infraction, the Officer may investigate only the infraction which gave rise to the stop, unless the State can identify some independent basis to enlarge the scope of the investigation. In the absence of an independent basis, the Officer lacks authority to extend the scope of the stop beyond an investigation for the traffic infraction for which the defendant is stopped. The Court finds that the Officer, at the time that he requested the passengers' identification, had no reasonable suspicion that the passengers or the defendant driver had committed any type of crime or that the passengers had committed any traffic infraction. Therefore, the Officer had no authority under these circumstances to demand identification from all passengers in the vehicle.

"The Court further finds that the Officer's observation of the nylon pouch was the result of the Officer's having asked the passengers for identification and learning that

one of the passengers had a warrant outstanding for his arrest. The Court finds that it was this information that led to the expanded investigation resulting in defendant's being asked to perform Field Sobriety Tests. Therefore, pursuant to the 'fruit of the poisonous tree' doctrine, all evidence of the defendant's having driven under the influence of intoxicants is inadmissible."

(Citations omitted.) The trial court's order was entered on February 27, 1997.

The state appealed. While the appeal was pending, the legislature enacted SB 936, section 1 of which provides:

"A court may not exclude relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by:

"(1) The United States Constitution or the Oregon Constitution[.]"

Or Laws 1997, ch 313, § 1. The legislature declared that section 1, among others, applies to all criminal actions pending or commenced on or after December 5, 1996. Or Laws 1997, ch 313, § 38. SB 936 became effective on June 12, 1997.

In its brief on appeal, the state argues that the trial court erred in granting defendant's motion to suppress because, among other things, section 1 of SB 936 applies to this case and compels admission of the evidence in the absence of a constitutional impediment to doing so. Defendant asserts a number of arguments in opposition to the application of SB 936 to this case, which we will address in turn.

Defendant first argues that SB 936 is "invalid and unconstitutional." In support of that argument, defendant asserts:

"Many of the arguments concerning the constitutionality of SB 936 are contained in briefs submitted by the Public Defender's office to the Oregon Supreme Court attacking the constitutional validity of Ballot Measure 40, the so-called 'victims' rights' initiative passed by the voters in November 1996 and effective December 5, 1996 (now codified as Article I, section 42, of the Oregon Constitution).

> Rather than repeat these extensive arguments, defendant incorporates them by reference[.]"

The problem is that the arguments to which he refers, filed in *State v. Cleveland,* SC S41302; *State v. Fleetwood,* SC S41311; and *State v. Toevs,* SC S42836, are indeed extensive, and defendant does not explain which of the many arguments asserted in that case are intended to be asserted here. We will not be put in the position of guessing which of those arguments apply in this case.

■ Defendant next argues that the validity and applicability of SB 936 depends on the validity and applicability of Ballot Measure 40. According to defendant, because the relating clause in the title of SB 936 states that the statute relates "to implementation of victims' rights initiative[,]" SB 936 can apply only if Ballot Measure 40 applies. Said another way, defendant argues that "if Measure 40 does not apply retroactively to crimes committed before its effective date and/or is constitutionally invalid, so is SB 936." We have, in fact, held that Ballot Measure 40 does not apply retroactively. *State v. Lanig,* 154 Or App 665, 963 P2d 58 (1998). And there is no question that defendant's crime was committed before the effective date of the measure. We therefore examine whether the fact that Measure 40 does not apply to this case necessarily means that SB 936 does not apply either.

Whether the applicability of SB 936 is conditioned on the applicability of Ballot Measure 40 is a question of legislative intent. Consistent with *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610-12, 859 P2d 1143 (1993), we examine the text of the statute, its context and, if necessary, its history and other interpretive aids.

In this case, nothing in the text of SB 936 suggests that its applicability is dependent upon the applicability of Measure 40. Defendant's argument rests not on the text of the act, but on the relating clause, which refers to "implementation of victims' rights initiative." At the outset, we note that the Supreme Court has held that the relating clause of a bill is not part of the statute itself and "cannot supply express provisions that are not otherwise in the [statute's] text." *Nakamoto v. Kulongoski,* 322 Or 181, 189, 904 P2d 165 (1995). The court regards a relating clause as akin to statute

headings and explanatory notes, which, under ORS 174.540, " 'do not constitute any part of the law.' " *Nakamoto*, 322 Or at 189 (quoting ORS 174.540); *see also State v. Rothman*, 69 Or App 614, 618, 687 P2d 798, *rev den* 298 Or 172 (1984) (Legislative Counsel erred in codifying legislation according to relating clause and not text of act).

Even assuming for the sake of argument that there exists language in the statute that creates some ambiguity on the subject, the legislative history confirms that the statute was not intended to be dependent on the applicability of Ballot Measure 40. To the contrary, the statute was drafted to ensure that the substance of Ballot Measure 40 may remain effective should some or all of the constitutional amendment be declared unconstitutional.

For example, Assistant Attorney General Tim Sylwester, a member of the working committee that drafted SB 936, explained to the Senate Committee on Crime and Corrections that in several cases defendants had challenged the constitutionality of Measure 40 and that those cases were pending before the Oregon Supreme Court. He estimated that there would be no ruling on those cases for at least six months to a year. He testified:

> "For that reason, I think that it is particularly important to get these statutory provisions in effect. One of the concerns I think that we have, is that if Measure 40 is struck down either in whole or in part a year from now, what we will have is a years' worth of criminal cases that may have to be reversed and retried. *To the extent that * * * some of these issues can be implemented by statute, * * * that particular risk will be reduced significantly.*"

Tape recording, Senate Committee on Crime and Corrections, March 10, 1997, Tape 31, Side A at 222 (emphasis supplied). Similarly, the House Committee in Judiciary, Subcommittee on Criminal Law, sought testimony on what effect a holding that Measure 40 was unconstitutional would have on SB 936. The following exchange occurred between members of the committee and Professor Kantor, who testified in opposition to SB 936, and Assistant Attorney General Sylwester, who testified in favor of the bill:

"[Representative Shetterly:] If a piece of Measure 40 is declared unconstitutional, or distinct pieces of it are declared unconstitutional, and there are corresponding statutory provisions, then, for the record, those corresponding statutory provisions also are unconstitutional and unenforceable. Is that correct?

"[Professor Kantor:] Certainly, * * * if the provisions of Measure 40 are struck on what I'd call substantive constitutional grounds, and there is an identical statutory provision, it will suffer the same fate, absolutely. However, one of the pernicious difficulties with Senate Bill 936 is that some things track exactly, and therefore are unnecessary. *Other things do not track exactly and may be different enough that some of them, some part of them will survive even if Ballot Measure 40's underpinning goes away.* And * * * that troubles me more than almost anything else, frankly, because I don't think anybody has successfully analyzed exactly what we would be looking at, what checkerboard we're going to be looking at depending on what the courts do with Measure 40 and part of whatever statute might get passed. And as I have said, I have heard no compelling reason of urgency to adopt all of this stuff right now.

"* * * * *

"[Sylwester:] There is not a severability clause in Measure 40, and * * * if the Supreme Court strikes out any portion of Ballot Measure 40, whether [SB 936] will fall in whole or only in part depends very much on what the nature of the constitutional ruling is and what the nature of the provision is, and it would be very difficult to say in any sort of abstract sense. If, for example, the Supreme Court says that Ballot Measure 40 is unconstitutional because it violates the single-subject requirement or is effectively a revision of the constitution which cannot be done by way of a[n] initiative petition, then all of Ballot Measure 40 will fall, not just various provisions.

"* * * * *

"[Representative Shetterly:] A ruling on constitutional grounds on that basis would not affect necessarily Senate Bill 936 at all, would it?

"[Sylwester:] * * * That is correct. *In that situation, Ballot Measure 40 may be out the window, but the various statutes that you adopted to implement it, at least I would*

*argue, would still be good.* If however, the court were to say, [for example], that subsection 1(a) of Ballot Measure 40 is unconstitutional then any statute that essentially tracks Ballot Measure [40], that portion probably would be unconstitutional for the very same reasons. It could well be though, and I think this is important to point out, a lot of the challenges or a lot of the complaints that defendants have about subsection 1(a), which is the pretrial release, they're saying that that particular provision is unconstitutional under the due process clause, and I think that one of their complaints is that it may, or at least they misread it as saying that it puts the burden of proof on defendants. Nowhere in section 1(a) does it put the burden of proof on the defendant. But even if that were what 1(a) did, if you enacted a statute that did not put the burden of proof on defendant, then if the Supreme Court were to strike down 1(a) as being unconstitutional for putting the burden of proof on defendant, the statute would still remain, because the statute does not share that same constitutional infirmity. And so it's going to depend very much on what the nature of the ruling is."

Tape Recording, House Committee on Judiciary, Subcommittee on Criminal Law, April 11, 1997, Tape 85, Side B at 147-193 (emphasis supplied). Nothing in the legislative history suggests that the legislature intended that the validity or applicability of SB 936 necessarily depends on the validity or applicability of Ballot Measure 40. We reject defendant's arguments to the contrary.

■    Next, defendant argues that SB 936 is unconstitutional because it violates the one-subject rule of Article IV, section 20, of the Oregon Constitution, which provides, in part:

"Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title. But if any subject shall be embraced in an Act which shall not be expressed in the title, such Act shall be void only as to so much thereof as shall not be expressed in the title."

That constitutional provision gives rise to more than one type of challenge and more than one type of relief. In *McIntire v. Forbes*, 322 Or 426, 443-44, 909 P2d 846 (1996), the Supreme Court observed that Article IV, section 20, sets "distinct

requirements for the body of an act, the title of the act, and the relationship between the body and the title." *Id.* at 438. First, the court explained, the opening clause of the first sentence of Article IV, section 20—which requires every act to "embrace but one subject"—imposes a distinct requirement and gives rise to a distinct challenge, which the court referred to as a "one-subject challenge to the body" of an act. *Id.* at 443. Second, the court further explained, the last clause in the first sentence—that the subject "be expressed in the title"—establishes a separate requirement regarding the title of the act and the relationship of the title to the body of an act. *Id.* at 438.

The court noted that different purposes are served by the various body and title requirements and different remedies result from the failure to comply with each. The court noted that, if a statute fails to contain a single subject, it is void. *Id.* at 446. In contrast, if a statute contains provisions not fairly expressed in the title, the act is void only as to what is not expressed in the title. *Id.* at 438.

With that background, the court examined the challenge before it, which it carefully characterized as a "one-subject challenge to the body" of an act. Indeed, in a footnote, the court explicitly cautioned that its opinion did not describe "how to analyze a challenge to the title of an act or a challenge to the relationship between the body and the title of an act." *Id.* at 444 n 14.

The proper analysis for a one-subject challenge to the body of an act, the court said, proceeds in two steps:

"(1)  Examine the body of the act to determine whether (without regard to an examination of the title) the court can identify a unifying principle logically connecting all provisions in the act, such that it can be said that the act 'embrace[s] but one subject.'

"(2)  If the court has *not* identified a unifying principle logically connecting all provisions in the act, examine the title of the act with reference to the body of an act. In a one-subject challenge to the body of an act, the purpose of that examination is to determine whether the legislature nonetheless has identified, and expressed in the title, such a unifying principle logically connecting all provisions in

the act, thereby demonstrating that the act, in fact, 'embrace[s] but one subject.' "

*Id.* at 443-44 (emphasis in original). The two steps are sequential. That is to say, if the answer to the first question is affirmative, the inquiry is at an end; only if the court *cannot* identify, without examining the title, a unifying principle logically connecting all provisions of the act, is it necessary to examining the title. *Id.; see also State ex rel Caleb v. Beesley,* 326 Or 83, 89, 949 P2d 724 (1997).

In this case, defendant asserts solely a one-subject challenge to the body of SB 936. He cites one case, *McIntire.* He correctly characterizes that one decision as a one-subject challenge to the body decision. He applies only the *McIntire* two-part test that is applicable to one-subject challenges to the body of an act. And he requests relief—voiding the entire enactment—that is available in the case of one-subject challenges to the body of an act. He does not mention anywhere in his brief any other type of challenge under Article IV, section 20. Nor does he request any relief other than what is available in the case of a successful one-subject challenge to the body of an act. Accordingly, we do not address other possible challenges to SB 936 under Article IV, section 20.[1]

Specifically, defendant argues:

"There is no unifying principle logically connecting all 39 provisions of this act. Only a few provisions relate to victims' rights (sections 2, 3, 4, 5, 6, 7, 11, 12, 13, and 20). Other provisions seem only to relate to the global topic of

---

[1] The concurrence suggests that, by contending that the title of SB 936 is not broad enough to connect all the provisions of law, defendant arguably raises a one-subject challenge to the title, not just the body. 154 Or App at 659. Under *McIntire,* reference to the title is required if we cannot identify, without reference to it, a unifying subject. *McIntire,* 322 Or at 444. Consistent with *McIntire,* defendant argues that it is not possible to identify a unifying subject, both without reference to the title and with reference to the title, and that the statute therefore is void. That is solely a one-subject challenge to the body of the act.

The concurrence alternatively argues, citing *State v. Hitz,* 307 Or 183, 766 P2d 373 (1988), that we should address the validity of the title even if defendant does not. 154 Or App at 661-62. *Hitz,* however, provides no support for the argument. It identifies the extent to which parties properly can assert an argument for the first time on appeal. It does not identify the extent to which the courts can address arguments not even raised by the parties on appeal. *Id.* at 188.

'criminal law.' Sections 18, 19, and 20 provide that the criminal accused will be incarcerated pretrial unless a court determines by clear and convincing evidence that the person will not commit new criminal offenses while on release. Other sections relate to the sentencing of persons convicted of crimes (sections 14, 15, 16, 17, 23, 24, 26, 27, 28, 32, and 33). * * * Sections 1, 29, and 34 concern the admissibility of evidence in a criminal trial."

In evaluating that argument, we apply the two-part test of *McIntire*. Accordingly, we first determine whether, without regard to the title of the act, we can identify a unifying principle logically connecting the various provisions of SB 936. We conclude that we can.

Section 1 prohibits a trial court from excluding relevant and otherwise admissible evidence in a criminal action on the ground that it was obtained in violation of statute unless exclusion is required by the Oregon or federal constitutions. Sections 29 and 34 also concern the admissibility of evidence in a criminal trial. Sections 2, 3, 4, 5, 6, 7, 11, 12, 13, and 20 pertain to crime victims in various ways during the stages of the criminal process, running the gamut from notification to victims regarding plea discussion and release hearings to the right to appear at parole hearings and express views relevant to the issues before the board. Sections 18, 19 and 20 modify release criteria, while sections 14, 15, 16, 17, 23, 24, 26, 27, 28, 32 and 33 relate to the sentencing of persons who have been convicted. Finally, section 9 modifies the way in which juries are selected in criminal cases. All of the substantive provisions of SB 936 relate to some aspect of the prosecution of crimes. The prosecution of any charged crime begins with arrest and continues through pretrial procedures that include pretrial release decisions, plea bargaining and jury selection. Next, the case may move to the trial stage, which involves issues about the admissibility of evidence. If the defendant is convicted, the next phase of the prosecution involves sentencing, probation or imprisonment, release on parole, and possibly probation or parole revocation proceedings. Thus, the provisions of SB 936 are intended to directly concern the prosecution and conviction of persons who have committed criminal acts, and it is that unifying principle that logically connects all of the provisions of the act.

Defendant insists that SB 936 affects more than the prosecution of crimes:

> "Section 9b revises the eligibility for jury service in both civil and criminal trials. Thus, more than the broad, general subjects of criminal law or victims' rights are embraced by SB 936."

That argument is not well taken. ORS 10.030 (1995) did not distinguish between the requirement for jury service in civil and criminal cases.[2] Section 9(b) does not alter the qualifications for serving on a civil jury; rather, it establishes different

---

[2] ORS 10.030 (1995) provided:

"(1) Except as otherwise specifically provided by statute, the opportunity for jury service shall not be denied or limited on the basis of race, national origin, gender, age, religious belief, income, occupation or any other factor that discriminates against a cognizable group in this state.

"(2) Any person is eligible to act as a juror unless the person:

"(a) Is not a citizen of the United States;

"(b) Does not live in the county in which summoned for jury service;

"(c) Is less than 18 years of age; or

"(d) Has had rights and privileges withdrawn and not restored under ORS 137.281."

Section 9b provides, in part:

"(1) Except as otherwise specifically provided by statute, the opportunity for jury service shall not be denied or limited on the basis of race, national origin, gender, age, religious belief, income, occupation or any other factor that discriminates against a cognizable group in this state.

"(2) Any person is eligible to act as a juror *in a civil trial* unless the person:

"(a) Is not a citizen of the United States;

"(b) Does not live in the county in which summoned for jury service;

"(c) Is less than 18 years of age; or

"(d) Has had rights and privileges withdrawn and not restored under ORS 137.281.

"(3)(a) Any person is eligible to act as a juror *in a criminal trial* beginning on or after December 5, 1996, unless the person:

"(A) Is not a citizen of the United States;

"(B) Does not live in the county in which summoned for jury service;

"(C) Is less than 18 years of age;

"(D) Has had rights and privileges withdrawn and not restored under ORS 137.281;

"(E) *Has been convicted of a felony or served a felony sentence within the prior 15 years; or*

"(F) *Is not registered to vote."*

(Emphasis supplied.)

qualifications for jurors serving on a criminal jury. The only difference between ORS 10.030 (1995) and section 9(b) regarding civil juries is that section 9(b) adds the emphasized words in subsection 2: "Any person is eligible to act as a juror *in a civil trial* unless the person * * *." That textual addition does nothing to change the qualifications for service on a civil jury. In fact, the rest of subsection 2 of section 9(b) establishes identical qualifications for jurors in civil trials as previously existed for civil trials under ORS 10.030 (1995). The added text merely serves to signal the reader to expect that there will be different qualifications for service on a criminal jury.

Subsection 3(a) of section 9(b) fulfills that expectation because it provides, "Any person is eligible to act as a juror *in a criminal trial,* beginning on or after December 5, 1996, unless the person * * *." (Emphasis supplied.) Not surprisingly, subsection 3(a) then sets out qualifications for serving as a juror in a criminal trial that are different from those qualifications that apply to civil trials. Because the only *change* that SB 936 has made involves the selection of jurors in criminal trials, section 9(b) is not outside of the general purpose of the bill as previously discussed.

Having identified a unifying principle logically connecting all of the provisions of the body of SB 936, we end our inquiry, as *McIntire* requires, and reject on that basis defendant's one-subject challenge to the body of the act. We do not examine the title of the act nor its relationship to the body and express no opinion about the merits of any possible arguments as to those matters.

■ Finally, defendant contends that the application of section 1 of SB 936 to his case violates the constitutional prohibition against *ex post facto* laws in Article I, section 21, of the Oregon Constitution, and Article I, section 10, of the United States Constitution. He explains that section 1 permits the admission of evidence that courts would have been required by statute to exclude under the law that existed on the date of the alleged offense. Article I, section 21, provides: "No *ex post facto* law * * * shall ever be passed * * *." In *State v. Gallant,* 307 Or 152, 764 P2d 920 (1988), the defendant challenged the retroactive application of a revised version of

OEC 609(1) that allowed impeachment evidence to be admitted at trial that would not have been admissible when the crime occurred. The court in *Gallant* rejected the defendant's argument that allowing impeachment evidence to be admitted under the revised provision amounted to an *ex post facto* violation.

> "Generally speaking, *ex post facto* laws punish acts that were legal at the time they occurred, change the punishment for those acts, or deprive the defendant of a defense for those acts. The amendment to OEC 609 did not create a new crime. It did not affect a substantive right of the defendant and it did not change the proof necessary to establish a crime. Under these circumstances, we hold that applying the new provision in this case did not amount to imposing *ex post facto* law."

*Id.* at 155 (citations omitted).

The same rationale applies in this case. Section 1 of SB 936 does not punish an act that was legal when it occurred, it does not change the punishment for the crime of driving under the influence of intoxicants, and it does not deprive defendant of a defense to the crime to which he otherwise would have been entitled. Moreover, it does not affect a substantive right of defendant, because ORS 810.410 "was not enacted to grant privacy rights; rather, it was intended to decriminalize routine traffic enforcement by restricting the authority of the police." *State v. Wright*, 152 Or App 282, 285, 954 P2d 809 (1998). Finally, section 1 of SB 936 does not change the quantum of proof necessary to establish the crime of DUII. Section 1 merely forbids courts from excluding "relevant and otherwise admissible evidence in a criminal action on the grounds that it was obtained in violation of any statutory provision unless exclusion of the evidence is required by * * * [t]he United States Constitution or the Oregon Constitution * * *." Accordingly, the admission of the excluded evidence under these circumstances does not violate Article I, section 21.

We reach the same result under Article I, section 10, of the United States Constitution. Defendant relies on the emphasized portion of the following quotation from *Calder v. Bull*, 3 US (3 Dall) 386, 1 L Ed 648 (1798):

"I will state what laws I consider *ex post facto* laws, within the words and the intent of the prohibition. 1st. Every law that makes an action done before the passing of the law; and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. *Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offenses, in order to convict the offender."*

3 US at 390. In *Thompson v. Missouri*, 171 US 380, 18 S Ct 922, 43 L Ed 204 (1898), the Court rejected an argument that a change in a state statute that allowed the admission of handwriting exemplars that were not admissible at the time of the commission of the offense violated the *ex post facto* clause. The Court declared:

"[W]e cannot perceive any ground upon which to hold a statute to be *ex post facto* which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed."

*Id.* at 387. In *Collins v. Youngblood*, 497 US 37, 110 S Ct 2715, 111 L Ed 2d 30 (1990), the Supreme Court noted that the fourth *Calder* category, regarding "legal rules of evidence" had been dropped from the definition of *ex post facto* in *Beazell v. Ohio*, 269 US 167, 46 S Ct 68, 70 L Ed 216 (1925). The Court said:

"The Beazell definition omits the reference by Justice Chase in Calder v. Bull, to alterations in 'legal rules of evidence.' As cases subsequent to Calder make clear, this language was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes."

*Collins*, 497 US at 42 n 3 (citations omitted). Accordingly, we hold that section 1 of SB 936 does not violate Article I, section 10, of the United States Constitution.

In summary, the trial court's ruling excluding the challenged evidence under ORS 810.410 is error because of

the retroactive effect of SB 936. On remand, the trial court is instructed to make findings regarding the officer's actions that followed the passenger's arrest. Based on those findings, the trial court must rule on the constitutionality of the officer's actions. In the event that the trial court concludes that no constitutional violation occurred, section 1 of SB 936 requires the admission of the excluded evidence. On the other hand, if the court determines that a constitutional violation occurred from which the excluded evidence is derivative, then it shall suppress the evidence.

Reversed and remanded.

**EDMONDS, J.,** concurring.

The majority holds that the trial court's ruling excluding the challenged evidence under ORS 810.410 was error because of the retroactive effect of Senate Bill 936. I agree with that holding. However, the majority does not decide whether SB 936 is in contravention of Article IV, section 20, of the Oregon Constitution, which requires that the unifying principle in the body of the act be expressed in the title and that there be a connecting relationship between the body and the title. It takes the position that defendant has not raised those issues on appeal. In my view, defendant has properly raised the issues that the majority refuses to consider, and I would resolve them by holding SB 936 constitutional.

The "title" issues are properly before us on appeal, because defendant argues, in part:

"Article IV, section 20, of the Oregon Constitution prohibits more than one subject from being embraced by a particular legislative enactment. Section 20 provides:

" 'Every Act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title.'

"In *McIntire v. Forbes*, 322 Or 426, 443-44, 909 P2d 846 (1996), the supreme court announced the analysis of the one-subject challenge to the body of a legislative act under Article IV, section 20. The analysis should proceed in these steps:

" '(1)   Examine the body of the act to determine whether (without regard to an examination of the title) the court can identify a unifying principle logically connecting all provisions in the act, such that it can be said that the act 'embrace[s] but one subject.

" '(2)   If the court has *not* identified a unifying principle logically connecting all provisions in the act, examine the title of the act with reference to the body of the act. In a one-subject challenge to the body of an act, the purpose of that examination is to determine whether the legislature nonetheless has identified, and expressed in the title, such a unifying principle logically connecting all provisions in the act, thereby demonstrating that the act, in fact, "embrace[s] but one subject.' * * *

"* * * * *

"Similarly, SB 936 relates to more than 'victims' rights.' The relating clause states:

" 'Relating to implementation of victims' rights initiative; creating new provisions; amending ORS 10.030, 10.050, 40.170, 40.175, 131.007, 135.230, 135.240, 135.245, 135.432, 135.970, 136.001, 136.450, 136.619, 137.106, 137.281, 137.540, 137.550, 144.108, 144.343, 419C.270, 419C.450, 421.508 and 423.478; repealing ORS 133.585 and 133.683; and declaring an emergency.'

"There is no unifying principle logically connecting all 39 provision of this act. Only a few provisions relate to victims' rights (sections 2, 3, 4, 5, 6, 7, 11, 12, 13, and 20). Other provisions seem only to relate to the global topic of 'criminal law.' * * *

"In *McIntire*, the supreme court found the act at issue 'so global that it does little more than define the universe with respect to which the legislature is empowered to act.' 322 Or at 445. The same is true here. The one subject of criminal law, or even 'victims' rights,' does not identify a unifying principle logically connecting all the provisions in SB 936. The subject is too broad and general.

"* * * * *

"The single-subject requirement of Article IV, section 20, is designed to prohibit the practice of combining multiple subjects into one proposed piece of legislation in order to

unite members of the legislature who favor certain provisions, but perhaps not others, so that they will support all of them. *McIntire*, 322 Or at 439. SB 936 contains many controversial provisions, some related to the passage of Ballot Measure 40 and other simply expanding the zealous prosecution of criminal offenders. It does not embrace only one subject. This court should declare it void." (Emphasis in original.)

Defendant's argument, as quoted above, encompasses more than a challenge to the body of the act under section 20. Defendant first quotes the relating clause of SB 936 and argues that "[t]here is no unifying principle logically connecting all 39 provisions [listed in the relating clause] of this act." That argument directly addresses the issue that there must be a unifying principle in the body of the act that is expressed in the title. Defendant also contends that "[t]he one subject of criminal law, or even *'victims' rights'* does not identify a unifying principle logically *connecting* all the provisions in SB 936." (Emphasis supplied.) The phrase "victims' rights" is a phrase that appears in the relating clause of the act. Thus, his argument arguably addresses the issue that there must be a connecting relationship between the title and the body in order for SB 936 to pass muster under Article IV, section 20.

Even if defendant does not expressly argue regarding the title of SB 936, the majority's refusal to consider a challenge on the grounds that the unifying principle in the body of the act is not expressed in the title of the act and that there is no relationship connecting the title and the body is inconsistent with the court's holding in *State v. Hitz*, 307 Or 183, 766 P2d 373 (1988). In that case, the court held that where a potential constitutional violation is involved, the defendant's omission of a possible dispositive source of argument or law will not prevent the court from reaching the issue. The court explained:

"In petitioning this court, defendant understandably feels compelled to argue that a conviction without evidence on an element of the offense is unconstitutional and that the appellate courts have the authority to recognize plain error on the face of the record, both of which propositions are true but unnecessary here. We have previously drawn

attention to the distinction between raising an *issue* at trial, identifying a *source* for a claimed position, and making a particular *argument. See Cooper v. Eugene Sch. Dist, No. 4J*, 301 Or 358, 369 n 12, 723 P2d 298 (1986). The first ordinarily is essential, the second less so, the third least. Thus, when a potential constitutional violation is involved, the parties' omission of a dispositive source or argument of ordinary law cannot compel a court to a needless constitutional decision." 307 Or at 188. (Emphasis in original.)

In this case, a potential constitutional violation is at stake. The majority's decision not to consider the challenge to SB 936 under the last phrase of the first sentence of section 20 could mean that defendant (assuming the validity of his argument) could be deprived of his liberty unlawfully if he is convicted. Regarding precedential value, we do a disservice to all the courts of the state when we bake only "half a cake" in response to defendant's broad challenge that SB 936 is in violation of Article IV, section 20. He quotes the pertinent language from section 20 that requires an examination of whether the unifying subject of the title is expressed in the title and whether there is a relationship between the body of the act and the title and concludes that this court should declare SB 936 "void." As is evident from the above quotations from defendant's brief, he has identified the issue (whether SB 936 is constitutional under section 20) for determination on appeal and the source (the language of section 20) of his position regarding that issue. Under *Hitz*, the fact that he does not make the specific argument in the language that the majority would require of him is immaterial. The issue of the constitutionality of SB 936 under the first sentence of section 20 is squarely before us, and we should decide it.[1]

---

[1] The majority makes much of the fact that defendant relies heavily on *McIntire*. In *McIntire*, the court did not examine whether a single unifying subject in the body of the act in issue in that case was also expressed in the title. There, the court could not find an unifying subject in the body by an examination of the body of the act or by reference to the title in light of the body. In other words, the *McIntire* court never got to the second requirement of section 20. Nonetheless, defendant's reliance on *McIntire* as authority for his attack on the body of SB 936 should not prevent us from considering his general challenge to its constitutionality based on the language of the constitution, particularly in light of the court's guidelines in *Hitz*.

If we were to decide all of the issues presented by defendant, the following analysis would apply. The principal purpose for section 20's title requirement is to provide notice to legislators and others of the contents of the bill so that those who cannot examine the body of the act for themselves can be assured that the body of the act does not deal with more than the title discloses. *McIntire,* 322 Or at 438-39. The title clause of SB 936 states, "Relating to implementation of victims' rights initiative." Measure 40 was adopted by the people in the general election on November 5, 1996. SB 936 was introduced during the 1997 legislative session and, as the majority points out, the relationship between Measure 40 and SB 936 was addressed in committee. In context, the phrase "victims' rights initiative" is an obvious reference to the subject matter of Measure 40 and puts the reader on notice as to that fact. It presumes that the reader is aware of or can become aware of the subject matter of Measure 40 and informs the reader that SB 936 deals with the same subject matter.

The preamble to Measure 40 says:

"This initiative is designed to preserve and protect crime victims' rights to justice and due process and to ensure the prosecution and convictions of persons who have committed criminal acts. It shall be interpreted to accomplish these ends."

Although the provisions of SB 936 and Measure 40 are not identical, they are substantively similar. Their commonality is that they relate to the prosecution and conviction of persons who have committed criminal acts. There are no hidden subjects in SB 936 that are not encompassed by its title referring to Measure 40. What Measure 40's preamble and its provisions characterize as "crime victims' rights" and what SB 936's title incorporates by reference are in substance changes in the law that facilitate the prosecution and conviction of persons who have committed crimes. As the majority notes, "[a]ll of the substantive provisions of SB 936 relate to some aspect of the prosecution of crimes." 154 Or App at 654. These changes involve such diverse subjects as the qualification of jurors in criminal cases, pretrial release provisions, sentencing provisions and the use of certain kinds

of evidence at trial. They also provide procedures whereby the voices of victims can be heard through the criminal proceeding. To the legislator or other interested person who would have read the title of SB 936 and its reference to Measure 40 while it was pending, that title would have alerted them to the fact that the common theme of SB 936 was to facilitate the convictions of criminals. Consequently, I would hold that the title of SB 936 meets the requisites of section 20 because it accurately notifies legislators and others as to the contents of the bill.

I would add one additional observation about the resolution of this case. Because of its ruling under ORS 810.410, the trial court made no findings or rulings regarding the actions taken by the officer after he arrested the passenger. Those subsequent actions included the seizure of the pouch, the opening of it, the ordering of defendant out of the car and the administration of the HGN and the field sobriety tests. The evidence in the record about the surrounding circumstances is conflicting, and it is possible that the trial court could make findings on remand that could dictate alternative conclusions about whether the officer's actions were constitutional under other provisions of the Oregon and federal constitutions. Thus, the lack of findings and the conflicts in the record make it impossible for us to otherwise adjudicate the lawfulness of the officer's actions under our standard of review as expressed in *Ball v. Gladden*, 250 Or 485, 487-88, 443 P2d 621 (1968). As a result, this case cannot be resolved on this record, even though we have rejected defendant's constitutional challenges against SB 936.

Accordingly, I concur with the majority's decision to reverse the trial court's ruling under ORS 810.410(3)(b) and to remand for further proceedings.

Deits, C. J., joins in this concurrence.