Argued March 19, reversed and dismissed April 22, costs retaxed May 27, 1924.

WASHINGTON CABLER v. GEORGE ALEXANDER, SHERIFF, ET AL.

(224 Pac. 1076.)

**Execution—Exemptions—Sale of Land on Execution and Exemption Therefrom Statutory.**

1. Both the right of sale of land on execution and the right of exemption therefrom were unknown at common law, but arise from statute.

**Homestead—Exemption not Applicable to "Noncontiguous" Parcels Abutting on Same Road or Street—"Contiguous."**

2. Sections 221, 224, Or. L., providing for homestead exemptions, do not give a homestead right in separate, noncontiguous parcels of land, and the fact that parcels, separated by intervening lands of another, abut on the same street or road does

---

2. Transfer of homestead from one building or tract of land to another, see note in 50 L. R. A. (N. S.) 1128.

See 23 C. J., p. 616 (1925 Anno.); 25 C. J., p. 8; 29 C. J., pp. 783, 791, 831, 832, 972.

111 Or.—17

not constitute such a physical connection as to make parcels "contiguous," but the fact that the tract is divided into lots or is separated by streets or alleys does not make the parcels "non-contiguous."

**Homestead—Appointment of Viewers and Marking Out Homestead Unnecessary Where Homestead Claim Invalid as Matter of Law.**

3. Where judgment debtor claimed a homestead exemption in property which was noncontiguous, and therefore as a matter of law not exempt, the sheriff was not obliged to desist from proceeding with the execution sale and go through the vain ceremony of appointing viewers and having the homestead marked out, under Section 224, Or. L.

**Homestead—That Judgment Debtors Claiming Homestead were Elderly Persons Could not be Considered.**

4. The fact that judgment debtors claiming a homestead right in land levied on were elderly persons could not be considered in determining the rights of the parties.

From Washington: George R. Bagley, Judge.

Department 1.

This was a suit brought to restrain the sheriff of Washington County from levying upon a tract of land containing four and three-fourths acres of land, claimed by Washington Cabler as part of his homestead.

The facts adduced indicate that Charlotte Cabler, the wife of Washington Cabler, resided with her husband upon a tract of land, being one of several rural lots and containing eight and five-eighths acres of land, which she owned; that John Cabler, their son, in his lifetime owned a tract immediately north of the first-named tract, containing four and one-fourth acres, upon which there were no buildings, although it was otherwise improved; that immediately south of the first-named tract of eight and five-eighths acres one John L. Edgar owned a tract of five acres; that John Cabler, deceased, owned a tract containing four and three-fourths acres immediately south of the Edgar tract; that in his life-

time John Cabler, who was unmarried, lived with his parents upon the eight and five-eighths acre tract, and that he and they farmed the two tracts that were owned by him in common with the eight and five-eighths acre tract, until his death. The tracts are designated, beginning at the north: the first as No. 1, which was one of the John Cabler tracts; No. 2, the Charlotte Cabler tract; No. 3, the John L. Edgar tract; and No. 4, the four and three-fourths acre tract owned by John Cabler in his lifetime. There is a county road running along the west side of the four tracts mentioned, and a street or avenue, designated as German Avenue, running the whole length of the tracts on the east side thereof; otherwise there is no physical connection between tracts 1 and 2 and tract No. 4.

John Cabler died about the tenth day of February, 1919. His estate was admitted to probate in Washington County and the plaintiff was appointed administrator of the estate, and while the administration is not yet technically complete, all debts against John Cabler's estate have been paid, and the plaintiff, Washington Cabler, and Charlotte Cabler, his wife, are the sole heirs of the estate.

The defendants Jeff Watson and Sylvia Polley, on the seventh day of November, 1920, secured a judgment in the Circuit Court against Washington Cabler for the sum of $233.35 and thereafter they issued an execution and the sheriff levied upon tract No. 4, heretofore designated, and was proceeding to sell the same on execution and to sell the interest of Washington Cabler therein, when Cabler made claim to the same as part of his homestead, claiming that his family homestead consisted of tracts Nos. 1, 2 and 4. Tract No. 4 not being physically

connected with tracts 1 and 2, the sheriff disregarded the homestead claim and this suit was brought against the sheriff and Oliver M. Hickey, the attorney for Watson and Polley, and also against Watson and Polley, to restrain them from making such sale.

It appears from the testimony, as before stated, that the residence of Washington Cabler and wife is upon tract No. 2, and that there is no disconnection between tracts 1 and 2; they having been farmed together by the plaintiff for the last seventeen years. Tract No. 4 has also been used for the same length of time for the purpose of raising hay and potatoes for family use and in connection with the activities on tracts 1 and 2, and the cause of this whole controversy is whether Washington Cabler's interest in tract 4 is subject to execution; tract 4 being physically disconnected from tracts 1 and 2.

REVERSED AND DISMISSED. COSTS RETAXED.

For appellants there was a brief and oral argument by *Mr. Oliver M. Hickey.*

For respondent there was a brief over the name of *Mr. E. B. Tongue.*

McBRIDE, C. J.—The principal question at issue here must be settled by a reference to our homestead statutes, which read as follows:

"§ 221. [Or. L.] Homesteads Exempt Must be Actual Abode. A homestead shall be exempt from sale on execution from the lien of every judgment and from liability in any form for the debts of the owner to the amount in value of three thousand dollars ($3,000), except as otherwise provided by law. The homestead must be the actual abode of and occupied by the owner, his or her spouse,

parent or child, and such exemption shall not be
impaired by temporary removal or absence with
the intention to reoccupy the same as a homestead,
nor by the sale thereof, but shall extend to the
proceeds derived from such sale to an amount not
exceeding three thousand dollars ($3,000), while
held, with the intention to procure another home-
stead therewith, for a period not exceeding one
year.''

"§ 224. [Or. L.] Manner of Setting Aside Home-
stead. Whenever a levy shall be made upon a
homestead, the owner thereof, his or her spouse,
parent or child, agent or attorney, may notify the
officer making such levy, at any time before the
sale thereof, that he claims a homestead in such
lands, giving a description of the quantity of land
claimed as a homestead and an estimate of the
value thereof, and the remainder. alone shall be sub-
ject to sale under such levy, unless the plaintiff in
the execution shall deny the right to such home-
stead, or be dissatisfied with the quantity or esti-
mate of the value of the land so claimed as a
homestead. If such plaintiff in the execution is
dissatisfied with the quantity claimed or the esti-
mate of the value thereof, then he may direct the
officer making the levy to select three disinterested
freeholders of the county who shall examine and ap-
praise, under oath, the lands and improvements,
and if the appraised value thereof exceeds the sum
of three thousand dollars ($3,000), said freeholders
may cause to be surveyed and shall set off in com-
pact form, including the dwelling house and ap-
purtenances, so much of the land claimed as a
homestead to the amount in value of three thousand
dollars ($3,000), and the remainder alone shall be
subject to sale under such levy. After the lands
are surveyed and set off, if in the opinion of the
plaintiff in the execution, the same shall be of
greater value than the sum of three thousand dol-
lars ($3,000), the officer may proceed to advertise
and sell the said premises so set off, and out of the
proceeds of such sale to pay to the homestead claim-

ant the sum of three thousand dollars ($3,000) and apply the balance of the proceeds of such sale on the execution; provided, however, that no sale shall be made in the case last mentioned unless a greater sum than three thousand dollars ($3,000) shall be bid for said premises. * * ''

1. Perhaps there is no question on which there is such apparent diversity of opinion as upon the one here presented. Able counsel for plaintiff has cited several opinions which apparently hold that, so long as there is no excess in value in the exemption, it makes no difference whether the homestead claimed consists of a single, compact parcel of land or of separate parcels. These distinctions seem, however, upon examination, to depend more upon statutes than upon any general principle. Both the right of sale of land upon execution and the right of exemption did not arise from the common law, but from statute, and it is to the interpretation of such statutes that we must look for the solution of this question.

2. In the authorities cited by counsel for plaintiff there is one general proposition that seems to be established, and that is that, where the physical separation of tracts or lots of land occurs merely from the interposition of streets and alleys, as in the case of different lots in the same block, or merely separated by a street, this is not such an isolation of particular tracts as will prevent a homestead claimant from having the homestead right, irrespective of the interposition of such easements. A strong case illustrating this principle is the case of *Morse* v. *Morris,* 57 Wash. 43 (106 Pac. 468, 135 Am. St. Rep. 968). In this case the claimants, Morse and wife, were the owners of lots 20, 21, 22 and 23 in block 7, and lots of the same description

in block 8, in the village of Fern Hill, a suburb of
Tacoma, Washington. Prior to June 22, 1909, one
John Strickland had obtained judgment against
them, and upon that date sued out an execution,
which was levied upon the lots in block 7. Plain-
tiffs' dwelling, woodshed, and outbuildings were
built on the lots in block 8. The lots in block 7
were used as a garden, orchard, chicken-run, etc.
The two blocks were separated by an alley. The
plaintiffs claimed all these lots as a homestead. The
Superior Court held, upon the trial, that because
the property was urban property and the blocks
were divided by an alley the homestead claimed was
invalid. The statutes, so far as they applied to the
question, were as follows: "The homestead consists
of the dwelling-house, in which the claimant resides,
and the land on which the same is situated, selected
as in this chapter provided." Remington & Bal-
linger's Code, § 528. Another section contains the
following provision: "Homesteads may be selected
and claimed in lands and tenements with the im-
provements thereon, not exceeding in value the sum
of two thousand dollars. The premises thus included
in the homestead must be actually intended and used
for a home for the claimants, and shall not be
devoted exclusively to any other purposes." Rem-
ington & Ballinger's Code, § 552. The court, in a
very strong opinion rendered by Mr. Justice CHAD-
WICK, held that under the circumstances the inter-
position of an alley did not so divide the two tracts
as to prevent them from being included in one home-
stead. The court quotes with seeming approval the
case of *Buxton* v. *Dearborn*, 46 N. H. 43, in which
it was held that a small tract a mile distant from
the dwelling-house, upon which the claimant cut hay

for his cow, might be included in the homestead if the two tracts did not exceed the statutory limit of value. The reasoning of the court was that if the land was actually used and was necessary for the convenient enjoyment of the home, it would defeat the humane object of the statute to deny the land its proper character because it did not happen to join the lots upon which the dwelling-house stood. In this case there was no statutory definition of a homestead and the court, as was proper under the circumstances, gave it an exceedingly liberal definition, amongst other things, saying:

"It is 'the family homestead of the head of each family,' which the statute exempts from levy and attachment. The term 'homestead' is used in the statute without further qualification; and the statute should have a liberal interpretation to accomplish the object of the law, which was to leave, for the upholding and support of a debtor's family, a property where they lived not exceeding five hundred dollars in value, that should be exempted from levy and attachment for his debts. If a piece of land was actually and conveniently used with the house, where a debtor lives, and was necessary to the convenient enjoyment of the house as a home for his family, the land might well be considered as a mere appurtenant to the house, and it would be a narrow construction, tending to defeat the humane object of the statute, to hold that it could not be regarded as parcel of the homestead because it did not happen to adjoin the land on which the house stood."

The court also quotes with approval the case of *Anderson* v. *Session,* 93 Tex. 279 (51 S. W. 874, 55 S. W. 1133, 77 Am. St. Rep. 873), which holds that the homestead may consist of separate parcels of land; but an examination of the homestead statute of Texas shows a condition of things very different from the prescriptions of our own homestead law.

Among other things, it provides: "The homestead of a family, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon." Art. 3786, Texas Civil Statutes.

In North Carolina it was held that the homestead might be laid off in two tracts of land not contiguous. The court, in the case of *Martin* v. *Hughes,* 67 N. C. 293, quoted the statute then in existence, which, among other things, enacted that: "Different tracts or parcels of land not contiguous may be included in the same homestead, when a homestead of contiguous lands is not of the value of one thousand dollars." (Laws 1868–69, c. 137, § 15.) The decision would seem to be a conclusion that was inevitably the result of the provision quoted, and not derived from any general principle in regard to homesteads.

In Missouri it was held, in the case of *Perkins* v. *Quigley,* 62 Mo. 498, that the only restrictions in regard to homesteads related to the quantity and value of the land, and that the parcels of land composing it need not be contiguous, provided that they were used in connection with each other. The statute in that case, Section 5853, Revised Statutes of Missouri, provided that there should be exempt "the homestead of every housekeeper or head of a family, consisting of a dwelling-house and appurtenances, and the land used in connection therewith."

In short, we find that all of the cases cited by counsel for plaintiff have been peculiar to the locality. We have found only one case in which the statute is practically similar to our own, and that is the case of *Bunker* v. *Locke,* 15 Wis. 702. The statute (Rev. Stats. 1858, c. 134, §§ 23, 24) there had practically the same provisions in regard to the

exemption and practically the same provisions in regard to the manner of laying off the tract in case of a dispute as to the value of the land claimed as exempt. In delivering the opinion of the court, Mr. Justice COLE said:

" * * It will be at once seen, that it is the land used for agricultural purposes, not exceeding forty acres, upon which is situated the dwelling-house, residence, or abode of the owner, and where such owner resides with his family, that the statute makes the 'homestead,' and extends to it its peculiar privileges and rights. It is the prescribed quantity of land or less where is situated the dwelling-house used as a 'home.' The chief characteristic or attribute of the 'homestead,' therefore, is— what indeed the word itself implies—that it is the land where is situated the dwelling of the owner and family. We do not ordinarily give the name or attach the idea of a 'homestead,' to several distinct and separate tracts of land, although the dwelling-house may be upon one of them and they may be owned and cultivated by the same person. We do not speak of a homestead in this sense. We rather mean the land upon which the dwelling-house is situated, and the adjoining premises in a reasonably compact form. Two or more adjoining lots may be used and occupied as the homestead, but the statute clearly contemplated they would form one body and be as compact as possible. It was not intended that the homestead might include disconnected tracts which are not contiguous or adjoining, but lying miles from each other. If this were the meaning of the statute, there would be an obvious impropriety in speaking of the homestead as consisting of any quantity of land not exceeding forty acres and the dwelling-house *thereon.* That is, the particular tract of land becomes and is the homestead because it is occupied by the dwelling-house or actual residence of the owner. It may frequently happen that the land which constitutes the homestead may be divided into

separate lots by a stream of water, a highway or railroad track; yet the intention of the law is, that it should form one body, as compact as possible, subject to such easements. It was not intended to exempt twenty acres where the house was, and ten acres of wood land, or ten acres of pine land, situate at a distance, entirely disconnected, merely because the latter tracts might be convenient for obtaining such essential articles as lumber for fencing or wood for fuel. If a doubt could arise under the twenty-third section, as to whether the homestead should not comprise contiguous tracts nearly as compact as possible, this doubt is removed by the language of the twenty-sixth section. This latter section provides that when the plaintiff in execution is dissatisfied with the quantity of land selected by the debtor, the officer making the levy is to cause the same to be surveyed, beginning at a point to be designated by the owner, and set off, in a *compact form,* the land —including the dwelling-house and its appurtenances —to the amount of forty acres.

"We are therefore clear in the opinion that the twenty acres of timber land cannot be claimed as a part of the homestead. It is situated at the distance of a mile from the homestead, and cannot, in any proper sense, be said to be a part of it. The circumstance that the prairie land or homestead is less valuable for agricultural purposes without the timber land than with it, cannot affect the question. If the wood land is a part of the homestead, it is exempt, or rather the mortgage upon it is void, whether the timber might be useful for wood, fencing, or other farming purposes, or whether it would not. This circumstance is quite immaterial in determining the question whether it is a part of the homestead." [15 Wis. 705–707.]

We lay particular stress upon this case on account of the similarity of the act to our own in many respects, and because the statute of Wisconsin, like our own, provides that the referees appointed in case

of dispute should lay off the homestead in compact form, which would be impossible where the tracts were separated by an intervening holding by other parties, as in this case. These words indicate that in the legislative mind was no idea that the homestead should be set apart in disconnected parcels.

The same conclusion is reached by the Supreme Court of Illinois in the case of. *Walters* v. *People,* 18 Ill. 194 (64 Am. Dec. 730), although the statute is in some respects dissimilar from our own and from the statute cited from Wisconsin.

In another case, *True* v. *Morrill,* 28 Vt. 672, cited by Mr. Thompson in his work on homestead exemptions, in a statute (Comp. Stats. 1851, c. 65, § 1) which described the homestead as consisting of a "dwelling-house, outbuildings, and lands appurtenant occupied as a homestead," by a housekeeper or the head of a family, to the value of $500, it appeared that a person had sold his home place before his death and was boarding, with his wife, at a neighbor's. His only remaining real estate consisted of one piece of ten or twelve acres, on which was a good barn and an old house occupied by a tenant, and on which the deceased had never resided, but upon which he had contemplated building a house for his own occupancy; a piece containing about twenty acres of wood and timber land, about fifty rods from the first-mentioned piece, which he had occupied by taking timber and firewood from it for his own use; another piece of about two acres of wood land, about a mile from the first; still another piece of two or three acres, about 100 yards from the first, on which there was a shop in which he had stored some of his household furniture, and in which he kept a few tools, and occasionally did

some work; and also a pew in a church, which was occupied by him and his family. It was held that none of these pieces of land constituted any part of the homestead of deceased. The court said that it would be an abuse of language to call the detached wood land his *homestead;* but the case turned rather on the fact that the home place had been sold, and that the deceased and his wife had boarded in another family for some time previous to his death, and, hence, that there was no *occupancy* within the meaning of the homestead law.

In another case, *Mills* v. *Estate of Grant,* 36 Vt. 269, a person died, seised of two distinct parcels of land, one of which was 50 rods from the other. A parcel of land owned by another person was between them. One of these parcels, upon which was a dwelling-house, outbuildings, and a garden, contained one and three-fourths acres, and the other about twenty and one-fourth acres. At the time of his death the deceased occupied the smaller parcel for the purposes of a dwelling-house and house lot, and occupied the other parcel as tillage and wood land. In setting apart this homestead to the widow it was held, without reference to the value of the property, that the homestead privilege embraced only the parcel of ground on which the dwelling-house stood, and did not extend to the detached parcel. In rendering the opinion of the court, Mr. Justice KELLOGG, J., said:

" * * The word 'lands,' in our statute, being in the plural, would seem to contemplate that more than one parcel of land might be included within the homestead exemption, but this construction would be satisfied by including within the exemption a single compact body of land made up of two or more subdivisions, lots, or inclosures which were contiguous.

We must resort to the general purposes of the statute for aid in its construction. The object of the exemption is to create a charge upon specific premises, consisting of a house and land, for the support and maintenance of the wife and family of the housekeeper, not subject to be defeated by his separate conveyance, or by attachment, or levy of execution on his debts. Although, during his life, it is an imperfect estate or interest, it is, nevertheless, so far as it operates as a restraint upon the alienation of the premises, such an encumbrance upon the title as creditors and purchasers would be bound to notice. If the land attached to the house is in one compact body, the encumbrance would apply to the whole of it until the homestead was ascertained and set out in the mode provided by the statute. When the real estate of the housekeeper is levied upon by virtue of an execution, the homestead is, on his election, to be ascertained and set out, and the remainder only is to be set off on the execution; and, when the debtor claims that his personal estate, or any part of it, under attachment, is the product of his homestead, it may be ascertained and set out to him by appraisers, and held free from the attachment. Comp. Stats. p. 390, § 2, p. 391, § 3. These provisions, as we think, indicate the intention of the legislature to confine the exemption to land which was in a single body, even though composed of separate parcels, and not to extend it so as to include parcels which were distinct and separate, and not adjoining or contiguous to the house lot. Upon any other construction it is apparent that, when a housekeeper was the owner of several distinct and separate parcels of real estate, neither a creditor nor a purchaser would have any means of determining, either from the records or by the actual occupancy, whether any specific parcel, except that upon which the house occupied by the housekeeper as a dwelling place was situated, was subject to, or free from, the exemption. * * "

After a very careful examination of all the authorities cited, and other authorities as well, we are satisfied that it never was the intention of our legislature to give a homestead right in separate, noncontiguous parcels of land. By the words "noncontiguous parcels" we do not mean separated merely by surveyor's lines, as lots in a block, or separated by streets or alleys, but parcels absolutely disconnected by intervening land, which is this case.

It is intimated that because an avenue runs along one side of these parcels and a county road on the other side, these constitute such a physical connection as makes the parcels contiguous; but, if this were so, it would make a parcel contiguous although in fact five miles away, if the road or street ran that distance. We know of no case that has carried the doctrine of contiguity longitudinally to any extent, although there are some cases, where the lots are connected by a private easement across the intervening land, in which the lots can be held to be contiguous, but the easement is an interest in the intervening land itself, and while such holdings seem to be pushing the doctrine of contiguity to its extreme extent, yet in view of the benevolent purposes of the statute, it is probably a view that the courts might well acquiesce in.

3. It is also urged that, the sheriff not having selected viewers and caused the homestead to be marked out, as provided by statute, the plaintiff in any event is entitled to prevail in this particular proceeding. But the plaintiff was claiming as a homestead that which, as a matter of law and upon the very face of his claim, was impossible to be such, and the sheriff was not obliged to desist from

proceeding with the sale in order that the forms of a vain ceremony should be gone through with.

4. The fact that the plaintiff and his wife are elderly persons and that this is an element in their subsistence, while it appeals strongly to our sympathies, cannot affect the law; and, in addition to this, it might even be the case that the plaintiffs in the execution and defendants here are also elderly persons and may possibly need the money plaintiff owes them quite as urgently as he needs the land. That is a consideration entirely apart from the rules which should control our decision in this case.

The decree of the Circuit Court is reversed and a decree will be entered here that plaintiff have no homestead right in tract No. 4, and that his suit be dismissed.

REVERSED AND DECREE ENTERED. COSTS RE-TAXED.

BROWN, RAND and COSHOW, JJ., concur.