Argued and submitted March 20, affirmed June 28, 2006

Nena LOVINGER,
*Petitioner,*
*and*

James JUST,
*Petitioner below,*

*v.*

LANE COUNTY,
*Respondent,*
*and*

Michael LEGAULT,
*Intervenor-Respondent below.*

2005-098; A131200

138 P3d 51

Stephen L. Vorhes, Lane County Office of Legal Counsel, argued the cause for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Schuman, Judge.*

LANDAU, P. J.

* Schuman, J., *vice* Richardson, S. J.

## LANDAU, P. J.

The owner of a 1.2-acre piece of rural property applied to Lane County to build a dwelling on the property. Petitioner, a neighboring landowner, objected to the construction of a dwelling on the ground that the 1.2-acre piece of property is part of a larger tract of land on which a dwelling already exists. According to petitioner, applicable zoning restrictions limit the number of dwellings to one per tract, and the 1.2-acre piece of land is part of a single parcel of land that has never been partitioned and, therefore, comprises a single tract. The county approved the application on the ground that the original parcel had been partitioned into two separate parcels when the prior owner deeded to the county a strip of property on which the county constructed a road that divided the parcel into two pieces. Petitioner appealed to LUBA, but LUBA affirmed the county's decision. Petitioner now seeks judicial review of LUBA's decision, arguing that, as a matter of law, the creation of a road through the original parcel of property did not create two separate parcels on which dwellings may now be constructed. We affirm.

The relevant facts are not in dispute. Before 1959, there existed a single piece of property identified as tax lot 200. The property was bordered on the south by Little Fall Creek. In 1959, the owner of tax lot 200 executed a warranty deed transferring title to the county in a narrow strip of property running east and west, which bisected the lot. To the north of the narrow strip of property was a larger, 6.35-acre lot, eventually designated tax lot 203. To the south of the narrow strip was a smaller, 1.2-acre lot that bordered the creek, eventually designated tax lot 200. The narrow strip itself became Little Fall Creek Road.

The county's comprehensive plan designates tax lots 200 and 203 "F2, Impacted Forest." Only one "forest template dwelling" may be located in a given "tract" of land. Lane Code (LC) § 16.211(5). A "tract" is "one or more contiguous lots or parcels under the same ownership." ORS 215.010(2). A "parcel," in turn, is a unit of land that is created by legally partitioning a larger piece of land or, if there are no applicable partitioning procedures, by deed or land sales contract. ORS 215.010(1).

In 2003, the county approved an application for the construction of a forest template dwelling on tax lot 203, that is, the larger lot located north of the Little Fall Creek Road. A house has been built on that site. Some time after that, the owner of tax lots 200 and 203 sold tax lot 200, the smaller lot located south of the road and on the creek.

In 2004, the owner of tax lot 200 applied for approval of a forest template dwelling on that lot. Petitioner objected to the application on the ground that tax lots 200 and 203 had never been lawfully partitioned and, as a result, still comprised a single "parcel" and, consequently, a single "tract." Petitioner argued that, because the two tax lots comprised a single tract, and because a forest template dwelling already had been constructed on that tract, the county was precluded from approving the application for a forest template dwelling on tax lot 200. With modifications not pertinent to the issues now before us, the county approved the application on the ground that the transfer of a fee interest in the narrow strip of land that later became the Little Fall Creek Road effectively partitioned the original tax lot 200 into two separate parcels, which are now in separate ownership and thus two separate tracts.

Petitioner appealed the county's decision to LUBA, arguing that, as a matter of law, the creation of a road does not divide a single parcel of land into two separate parcels. LUBA rejected the argument, concluding that, while the creation of a road by mere easement or dedication might not partition a parcel of land, the transfer of fee title in property does. According to LUBA, the fact that the county later used that narrow strip of property for a road does not alter the fact that the strip was deeded outright to the county, which had the effect of creating not just two, but three, separate parcels of land.

On judicial review, petitioner argues that LUBA erred because ORS 92.010(7)(d) expressly provides that property divided by the sale or grant of land for a road shall continue to be regarded as a single parcel unless further subdivided or partitioned.

The county responds that petitioner's reliance on ORS 92.010(7)(d) is misplaced, as the legislature did not

enact the statute until 30 years after the road in this case was created. What is more, the county argues, there is nothing in the statute that suggests that the legislature intended it to apply retroactively.

Petitioner replies that the fact that the statute was not enacted until 30 years after the creation of the road is of no moment for two reasons. First, she argues, the statute merely codified the law that had been reflected in the appellate decisions of this state for many years. Second, she argues, in any event, the legislature must have intended the statute to apply retroactively.

The issue thus framed is one of statutory construction, resolved by reference to the interpretive principles set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). We attempt to determine what the enacting legislature intended the statute to mean, beginning with the text of the statute in context and, if necessary, consulting the legislative history and other aids to construction. *Id.*

■ Petitioner argues that tax lot 200 remains part of the same parcel of land as tax lot 203 because it was not legally partitioned in 1959. According to petitioner, the construction of the road did not have the effect of partitioning the single parcel that then existed, because ORS 92.010(7)(d) provides that creation of roads does not have the effect of partitioning the parcels on which they are located.

ORS 92.010(7)(d) provides that "any property divided by the sale or grant of property for state highway, county road, city street or other right of way purposes shall continue to be considered a single unit of land until such time as the property is further subdivided or partitioned." That portion of the statute was enacted in 1991, long after the creation of the Little Fall Creek Road in 1959. As we have noted, petitioner argues that the fact that the statute was not enacted until decades after the creation of the road is of no significance, because the statute merely reflects the law as it had existed well before the creation of the road. In advancing that argument, petitioner relies on *Cabler v. Alexander et al.*, 111 Or 257, 224 P 1076 (1924), and *State v. Emmich*, 34 Or App 945, 580 P2d 570 (1978).

■ There is no question but that the legislature sometimes has enacted statutes not to effect a change in the law, but to codify existing law. *See, e.g.,* ORS 174.040 (codifying judicially created rule regarding the severability of statutes); *State v. Jackson,* 224 Or 337, 343, 356 P2d 495 (1960) ("ORS 174.040 does no more than to codify what has long been the common law rule of construction in this state."). Moreover, it is entirely appropriate to consider the preexisting state of the law as context for the statute that the legislature has enacted. *See, e.g., Weber and Weber,* 337 Or 55, 67, 91 P3d 706 (2004) ("[T]his court presumes that the legislature enacts statutes in light of existing judicial decisions that have a direct bearing upon those statutes.").

That said, we are not persuaded that the two cases on which petitioner relies establish that the preexisting law was as she contends.

*Cabler* concerned whether a homestead exemption applied to noncontiguous property that was separated from the landowner's property by an intervening ownership. The Supreme Court determined that earlier case law had established the general proposition that,

> "where the physical separation of tracts or lots of land occurs merely from the interposition of streets and alleys, as in the case of different lots in the same block, or merely separated by a street, this is not such an isolation of particular tracts as will prevent a homestead claimant from having the homestead right, irrespective of the interposition of such *easements.*"

111 Or at 262 (emphasis added). The court concluded that the legislature had not intended to give a homestead right in "noncontiguous parcels," adding that,

> "[b]y the words 'noncontiguous parcels' we do not mean separated merely by surveyor's lines, as lots in a block, *or separated by streets or alleys,* but parcels absolutely disconnected by intervening land, which is this case."

111 Or at 271 (emphasis added).

We cited *Cabler* half a century later, in *Emmich.* *Emmich* involved a defendant who owned property on both sides of a road and who was convicted of unlawfully dividing

his property on one side of the road into three parts, and his property on the other into two parts, in violation of the applicable subdivision laws. The defendant argued that the subdivision laws applied when a landowner divided a *single* unit of land into four or more parts, but that, in his case, the road had already partitioned his property into two distinct parcels, and thus he had divided each parcel into less than four parts. We rejected the argument. Citing *Cabler*, we explained:

> "The law has held in other land-use contexts that a parcel of land does not lose its unitary character simply by the happenstance of an intersecting boundary line, street or dedicated road. We are not directed to any case where land was held to be noncontiguous due to separation by anything short of an intervening geographical barrier or parcel of land in separate ownership."

34 Or App at 949 (citations omitted).

Neither *Cabler* nor *Emmich* supports defendant's assertion that the 1959 transfer of title did not partition the parcel in this case. As for *Cabler*—putting aside the facts that its conclusion about the effect of intervening roads was *dictum* (the case did not involve an intervening road at all) and that it dealt with a homestead exemption and not partitioning—its conclusion about "streets or alleys" pertains to roads that exist as "easements," not to roads created when ownership in fee to the underlying land has changed hands. In fact, the court in *Cabler* concluded that parcels that are separated by "intervening land" are noncontiguous. If anything, then, *Cabler* seems to cut against petitioner's position: In 1959, when the owner of what was then tax lot 200 transferred the strip of land in fee to the state, the effect was, indisputably, to separate the parcel north of the road from the parcel south of the road by "intervening land" held in different ownership.

Further, *Emmich* does not advance petitioner's cause. Like *Cabler*, *Emmich* does not explicitly distinguish between roads that consist of land that has been transferred in fee and those that are merely dedicated. Nevertheless, it is apparent that we considered the effect of only the roads of the latter sort. We explicitly stated that a parcel of land "does not lose its unitary character because of the happenstance of an

intersecting boundary line, street or *dedicated* road." 34 Or App at 949 (emphasis added). Unlike the road in this case, the county road that was at issue in *Emmich* was a dedicated road. Indeed, the state had specifically argued in *Emmich* that

> "[t]he county road does not constitute intervening land disconnecting this property. It is not a parcel of property but more in the nature of an encumberance on the title to the tract. If the road were vacated title would vest in the owner of the tract through which the road ran."

Moreover, in reaching our conclusion, we specifically noted that we were unaware of cases in which land was "held to be noncontiguous due to separation by anything *short of an intervening geographical barrier or parcel of land in separate ownership.*" *Id.* (emphasis added). Thus, much like *Cabler*, if anything, *Emmich* seems to cut *against* petitioner's position, by suggesting that intervening land in separate ownership does have the effect of "disconnecting"—and hence partitioning—land.

In short, the case law on which petitioner relies does not support her position that, in 1959, the state of the law was that a road could *never* partition a parcel, even where the land underlying the road has been transferred in fee to a different owner. In the absence of any authority to the contrary, either in the cases or in contemporaneous statutes, we conclude that, under the law as it existed in 1959, transfer of title to the strip of land containing the road effectively created three separate parcels: tax lot 200, tax lot 203, and the land containing the road.

Our reading of the foregoing cases is borne out by reference to other statutes that existed at the time. ORS 92.014, for example, provides that "[a] person may not create a street or road for the purpose of subdividing or partitioning an area or tract of land *without the approval of the city or county having jurisdiction over the area or tract.*" (Emphasis added.) That statute dates back to 1955. It presumes that a person *can* create a street or road for the purpose of subdividing or partitioning a tract of land, so long as the city or county

having jurisdiction over it approves. The statute thus contradicts petitioner's main contention, which is that, in 1959 no road of any sort could subdivide or partition a tract of land.

■     There remains petitioner's alternative argument that, even if the case law did not preclude partitioning a parcel by creation of a road, ORS 92.010(7)(d) retroactively does so. According to petitioner, the legislature could not possibly have intended there to be one rule governing the effect of roads created before the enactment of the statute and another governing the effect of roads created after enactment. In support of that conclusion, petitioner argues that "the use of the word 'continue' in ORS 92.010(7)(d) implies that the statute was merely codifying and clarifying what was already the law."

Petitioner's argument is circular. It assumes that the law that the legislature was "merely codifying and clarifying" was that the creation of a road could not, under any circumstances, partition a tract of land. As we have noted, that assumption is misplaced.

■     Nevertheless, we have an obligation to determine the proper meaning of statutes, regardless of the correctness of the parties' arguments. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). We therefore turn to the question whether ORS 92.010(7)(d) was intended to apply retroactively to partitions that occurred 30 years before enactment. of the statute.

■     Whether a statute applies prospectively or retroactively is a question of legislative intent, determined by applying the usual principles of statutory construction. *Whipple v. Howser*, 291 Or 475, 479-81, 632 P2d 782 (1981) (noting that the role of the court in determining whether a statute applies retroactively is to "discern and declare the intent of the legislature"); *State v. Lanig*, 154 Or App 665, 670, 963 P2d 58 (1998) (applying *PGE* method to retroactivity analysis).

■     The text of ORS 92.010 contains no mention of retroactivity. *See State ex rel Juv. Dept. v. Nicholls*, 192 Or App 604, 609, 87 P3d 680 (2004) (noting that, in examining the

text, the court looks first for the presence of an explicit retroactivity clause). Although certainly not conclusive, the absence of such a clause is evidence that the legislature did not intend for the statute to apply retroactively. *Boone v. Wright*, 314 Or 135, 138, 836 P2d 727 (1992); *see also Lanig*, 154 Or App at 670 (noting that the absence of a retroactivity clause is telling because such clauses are easily added and are commonly employed by the legislature).

■     The phrasing of substantive provisions of the statute sometimes may provide clues as to the legislature's intention with respect to retroactivity. *See, e.g., Newell v. Weston*, 150 Or App 562, 569-70, 946 P2d 691 (1997) (using language "cues" such as verb tenses in an effort to determine whether legislature intended a statute to apply retroactively). In this case, however, the statute provides little evidence one way or the other of legislative intent with respect to retroactivity.

The statute does provide, as petitioner asserts, that property divided by the sale of land for a road "shall *continue* to be considered a single unit of land." (Emphasis added.) In context, however, the reference to continuity clearly refers to the fact that a single tract of land before the creation of a road remains a single tract after the creation of the road until further partition or subdivision takes place. Nothing in the statute generally, or the reference to continuity in particular, suggests that its focus is on the status of the single tract of land before and after enactment of the statute itself.

Even assuming for the sake of argument that petitioner's reading of the statute were plausible, that assumption does not disprove the plausibility of the alternate reading that we have suggested. Thus, at best, petitioner's argument would lead to analysis of the legislative history and, if necessary, resort to other aids to construction.

As is often the case with statutes in which the legislature did not explicitly express its intentions regarding retroactivity, the legislative history of ORS 92.010(7)(d) sheds no light on what those intentions, if any, might have been. *See Nicholls*, 192 Or App at 609 ("[W]hen a statute lacks an express retroactivity clause, the legislative record is typically silent and of no assistance.").

■ We turn, then, to the canons of statutory construction. In particular, we turn to the rule that, in the absence of any direct evidence of the legislature's intentions, the courts presume that statutes that are "substantive" in nature are to apply prospectively. *Id.* at 610. In the context of retroactivity analysis, a statute is "substantive" if it " 'modif[ies] a substantive right or duty.' " *Vloedman v. Cornell*, 161 Or App 396, 401, 984 P2d 906 (1999) (quoting *Perkins v. Willamette Industries*, 273 Or 566, 571 n 1, 542 P2d 473 (1975)).

ORS 92.010(7)(d) defines the legal effect of a road with regard to partitioning and is thus plainly "substantive." What it codifies is not a procedural requirement but rather a substantive right. As this case aptly demonstrates, whether a road effectively partitions a parcel can have significant substantive legal consequences with respect to the rights of the owner of that parcel in regard to the development or sale of the property.

ORS 92.010(7)(d) is, in summary, a substantive law that lacks a retroactivity clause or any other explicit language suggesting the legislature intended it to apply retroactively, nor does its legislative history shed light on the issue. Under those circumstances, we conclude that the law was not intended to apply retroactively.

We therefore conclude that LUBA did not err in determining that the deeding of the strip of land to the county in 1959 effectively partitioned what was then tax lot 200 into two separate parcels and that, as a result, the county was not precluded from approving an application for the construction of a forest template dwelling on each of the two resulting tracts.

Affirmed.